# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATURAL RESOURCES DEFENSE COUNCIL, INC.,

    Plaintiff,

    v.

DOUG BURGUM, *Secretary of the Interior, in his official capacities as CHAIR and MEMBER of the ENDANGERED SPECIES COMMITTEE*, *et al.*,

    Defendants.

Case No. 1:26-cv-1116-RC

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION TO DISMISS

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

  I.  The Endangered Species Act ...................................................................................... 2

      A.  ESA Section 7 .................................................................................................. 2

      B.  The Committee .................................................................................................. 3

      C.  Exemptions ....................................................................................................... 4

  II.  Factual and Procedural Background ........................................................................... 5

      A.  ESA Section 7 consultation on oil and gas activities in the Gulf of America .............. 5

      B.  NEPA review .................................................................................................... 6

      C.  Meeting of the Committee and Exemption Order ............................................ 7

      D.  Plaintiff's district court and circuit court actions ............................................ 7

      E.  Other pending actions ...................................................................................... 9

LEGAL STANDARDS ...................................................................................................... 9

ARGUMENT ................................................................................................................... 10

  I.  Judicial review of Plaintiff's claims is available exclusively in the courts of appeals. ....... 10

      A.  Congress designed the ESA exemption process to culminate in one final agency action. ............................................................................................... 10

      B.  Judicial review of the grant of an exemption is available only in the courts of appeals ..................................................................................................... 14

      C.  The APA does not provide an alternative avenue for Plaintiff to bring its claims in district court. ................................................................................... 18

      D.  Plaintiff's NEPA claim similarly must be raised on a petition for review in the courts of appeals. ................................................................................... 20

  II.  Plaintiff cannot maintain parallel actions challenging the same exemption order .............. 22

CONCLUSION ................................................................................................................. 26

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Am. Petroleum Inst. v. S.E.C.*,
  714 F.3d 1329 (D.C. Cir. 2013)...................................................................................... 14

*Apotex, Inc. v. FDA*,
  393 F.3d 210 (D.C. Cir. 2004)........................................................................................ 25

*Arch Coal, Inc. v. Acosta*,
  888 F.3d 493 (D.C. Cir. 2018)................................................................................. 15, 20

*Block v. Cmty. Nutrition Inst.*,
  467 U.S. 340 (1984)....................................................................................................... 18

*Bombardier, Inc. v. U.S. Dep't of Lab.*,
  145 F. Supp. 3d 21 (D.D.C. 2015) ............................................................................... 15

*Brown v. G.S.A.*,
  425 U.S. 820 (1976)....................................................................................................... 18

*Cal. Save Our Streams Council, Inc. v. Yeutter*,
  887 F.2d 908 (9th Cir. 1989).......................................................................................... 22

*City of Rancho Palos Verdes v. Abrams*,
  544 U.S. 113 (2005)....................................................................................................... 18

*\*City of Rochester v. Bond*,
  603 F.2d 927 (D.C. Cir. 1979)...................................................................... 20, 21, 22, 23

*City of Tacoma v. Taxpayers of Tacoma*,
  357 U.S. 320 (1958)....................................................................................................... 14

*Clayton v. Dist. of Columbia*,
  36 F. Supp. 3d 91 (D.D.C. 2014) .................................................................................. 24

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)....................................................................................................... 23

*Connecticut v. U.S. Dep't of the Interior*,
  344 F. Supp. 3d 279 (D.D.C. 2018) .............................................................................. 10

*Ctr. for Biological Diversity v. U.S. E.P.A.*,
  106 F. Supp. 3d 95 (D.D.C. 2015) ................................................................................ 16

*Eagle-Picher Indus., Inc. v. U.S. E.P.A.*,
   759 F.2d 905 (D.C. Cir. 1985)..................................................................................... 16

*EC Term of Years Tr. v. United States*,
   550 U.S. 429 (2007)........................................................................................... 18, 19

*Ecee, Inc. v. F.E.R.C.*,
   611 F.2d 554 (5th Cir. 1980) ................................................................................... 19

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012)...................................................................................................... 23

*Env't Def. Fund v. EPA*,
   485 F.2d 780 (D.C. Cir. 1973)................................................................................. 21

*Hardison v. Alexander*,
   655 F.2d 1281 (D.C. Cir. 1981)............................................................................... 23

*Herbert v. Nat'l Acad. of Scis.*,
   974 F.2d 192 (D.C. Cir. 1992)................................................................................... 9

*Hinck v. United States*,
   550 U.S. 501 (2007)........................................................................................... 17, 18

*Katz v. Gerardi*,
   655 F.3d 1212 (10th Cir. 2011) ............................................................................... 24

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
   342 U.S. 180 (1952).................................................................................................. 23

*Kokkonen v. Guardian Life Ins. Co.*,
   511 U.S. 375 (1994).................................................................................................... 9

*Loughlin v. United States*,
   393 F.3d 155 (D.C. Cir. 2004).................................................................................... 9

*Louisiana v. NMFS*,
   817 F. Supp. 3d 390 (W.D. La. 2026) ........................................................................ 6

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).................................................................................................... 9

*Mexichem Specialty Resins, Inc. v. E.P.A.*,
   787 F.3d 544 (D.C. Cir. 2015)................................................................................. 16

*Michigan v. United States*,
994 F.2d 1197 (6th Cir. 1993) ............................................................................... 22

*Nader v. Volpe*,
466 F.2d 261 (D.C. Cir. 1972) ........................................................................... 16, 25

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
583 U.S. 109 (2018) ............................................................................................... 14

*Neville v Burrows*,
No. 22-3246 (RC), 2024 WL 578986 (D.D.C. Feb. 13, 2024) .................................... 9

*Russello v. United States*,
464 U.S. 16 (1983) ................................................................................................. 12

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,
605 U.S. 180 (2025) ............................................................................................... 20

*Sierra Club v. NMFS*,
797 F. Supp. 3d 440 (D. Md. 2024) ......................................................................... 5

*Sierra Club v. Thomas*,
828 F.2d 783 (D.C. Cir. 1987) ............................................................................... 16

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ................................................................................................... 9

*Steele v. United States*,
144 F.4th 316 (D.C. Cir. 2025) ......................................................................... 22, 23

*Sunshine Anthracite Coal Co. v. Adkins*,
310 U.S. 381 (1940) ............................................................................................... 25

*\*Telecomms. Rsch. & Action Ctr. v. F.C.C.*,
750 F.2d 70 (D.C. Cir. 1984) .......................................................... 15, 16, 19, 24

*Theodore Roosevelt Conservation P'ship v. Salazar*,
616 F.3d 497 (D.C. Cir. 2010) ............................................................................... 20

*Wagner v. Fed. Election Comm'n*,
717 F.3d 1007 (D.C. Cir. 2013) ......................................................................... 14, 15

*Zerilli v. Evening News Ass'n*,
628 F.2d 217 (D.C. Cir. 1980) ......................................................................... 23, 24

**Statutes**

5 U.S.C. §§ 701-06 ........................................................................................................ 19

5 U.S.C. § 701(a)(1)....................................................................................................... 18

5 U.S.C. § 703................................................................................................................. 20

5 U.S.C. § 704........................................................................................................ 15, 19, 25

5 U.S.C. § 7123............................................................................................................... 19

15 U.S.C. § 3416............................................................................................................. 19

16 U.S.C. § 1532(6) ......................................................................................................... 2

16 U.S.C. § 1532(19) ....................................................................................................... 3

16 U.S.C. § 1532(20) ....................................................................................................... 2

16 U.S.C. § 1533(a)(1)..................................................................................................... 2

16 U.S.C. § 1533(d) ......................................................................................................... 3

16 U.S.C. § 1536(a)(2).......................................................................................... 2, 3, 4, 13

16 U.S.C. § 1536(a)(2)-(3)............................................................................................... 2

16 U.S.C. § 1536(b)(3)(A)............................................................................................... 2

16 U.S.C. § 1536(b)(4) .................................................................................................... 3

16 U.S.C. § 1536(e) ......................................................................................................... 3

16 U.S.C. § 1536(e)(1)-(2)...............................................................................................11

16 U.S.C. § 1536(e)(2)..................................................................................................... 13

16 U.S.C. § 1536(e)(3)(A)-(F) ......................................................................................... 3

16 U.S.C. § 1536(e)(3)(G) ............................................................................................... 3

16 U.S.C. § 1536(e)(5)(A) ............................................................................................4, 11

16 U.S.C. § 1536(e)(5)(C) ............................................................................................... 4

16 U.S.C. § 1536(e)(5)(D) ............................................................................................... 4

16 U.S.C. § 1536(e)(7)(A) ............................................................................................4, 11

16 U.S.C. § 1536(g)(2)(B) ............................................................................................... 4

16 U.S.C. § 1536(g)(3)-(5) .............................................................................................. 4

16 U.S.C. § 1536(h) .................................................................................................... 3, 10

16 U.S.C. § 1536(h)(1) ............................................................................................. passim

16 U.S.C. § 1536(j)................................................................................................. 4, 12, 13

16 U.S.C. § 1536(l)......................................................................................................... 13

16 U.S.C. § 1536(*l*)(1) ...........................................................................................................4, 11

16 U.S.C. § 1536(m) ........................................................................................................... 12, 13

16 U.S.C. § 1536(n) ............................................................................................................. passim

16 U.S.C. § 1536(*o*)(1) ...................................................................................................... 3, 4, 13

16 U.S.C. § 1536(*o*)(2) ................................................................................................................. 3

16 U.S.C. § 1538(a)(1)(B) ........................................................................................................... 3

16 U.S.C. § 1539............................................................................................................................ 3

16 U.S.C. § 1540............................................................................................................................ 3

16 U.S.C. § 1540(c) ................................................................................................................... 12

16 U.S.C. § 1540(g) ................................................................................................................... 12

28 U.S.C. § 1331 ......................................................................................................................... 18

28 U.S.C. § 2112(a) ............................................................................................................. 17, 19

28 U.S.C. § 2112(a)(3)................................................................................................................. 8

28 U.S.C. § 2401(a) ............................................................................................................. 17, 19

33 U.S.C. § 1369(b) ................................................................................................................... 14

42 U.S.C. § 1983.......................................................................................................................... 18

42 U.S.C. § 4332(2)(C).............................................................................................................. 6

42 U.S.C. § 4336e(6) .................................................................................................................. 6

## Rules

Fed. R. Civ. P. 12(b)(1) .............................................................................................................. 9

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 9, 23

## Regulations

50 C.F.R. § 402.02 ....................................................................................................................... 2

50 C.F.R. § 402.13(b)................................................................................................................... 2

50 C.F.R. § 402.14(a)................................................................................................................... 2

50 C.F.R. § 402.14(a)-(b)............................................................................................................ 2

50 C.F.R. § 402.14(h)................................................................................................................... 2

50 C.F.R. § 402.14(h)(1)(iv)(A).................................................................................................. 2

50 C.F.R. § 402.14(h)(2)............................................................................................................. 2

50 C.F.R. § 402.14(i)......................................................................................................... 3

50 C.F.R. § 451.02(b)......................................................................................................... 4

50 C.F.R. § 453.03(b)......................................................................................................4, 11

50 C.F.R. § 453.03(d)......................................................................................................... 4

50 C.F.R. § 453.05(e)......................................................................................................... 4

**Federal Register**

91 Fed. Reg. 12672 (Mar. 16, 2026) .............................................................................. 7

91 Fed. Reg. 16966 (Apr. 3, 2026) ............................................................................ 7, 13

**Legislative Materials**

S. Rep. No. 95-874 (1978) ............................................................................................11

**INTRODUCTION**

On March 31, 2026, the Endangered Species Committee ("Committee") granted an exemption from the requirements of the Endangered Species Act ("ESA") for oil and gas activities in the Gulf of America. The ESA contains a statutory review provision requiring that all challenges to Committee action be brought in the courts of appeals. 16 U.S.C. § 1536(n). Plaintiff knows this: it challenged the Committee's exemption directly in the courts of appeals, just as the statute requires. *See* Exhibit A (Plaintiff's Petition for Review).

The Court thus lacks jurisdiction over this parallel district court challenge to the Committee's exemption because the ESA's jurisdiction channeling provision provides the sole vehicle for judicial review of the Committee decisions. *Cf. Center for Biological Diversity v. Burgum et al.*, D.D.C. No. 1:26-cv-940, Dkt. No. 17 (denying TRO that tried blocking the meeting where the Committee granted the exemption, in part, because the "Court likely lacks subject matter jurisdiction over" the plaintiff's claims (citing 16 U.S.C. § 1536(n)). There is no cause of action under the Administrative Procedure Act ("APA") where, as here, another statute precludes review. Nor does Plaintiff's claim under the National Environmental Policy Act ("NEPA") provide an avenue for review of Plaintiff's claims in this Court. Plaintiff must raise all of its claims challenging the Committee's order in a petition for review in the court of appeals.

The Court should dismiss Plaintiff's amended complaint both because the Court lacks subject matter jurisdiction and because Plaintiff has attempted to split its claims across two courts.

1

## BACKGROUND

### I.     The Endangered Species Act

#### A.     ESA Section 7

The ESA directs the Secretaries of the Interior and Commerce to determine which species to list as "endangered" or "threatened." 16 U.S.C. § 1533(a)(1); *id.* § 1532(6) (defining "endangered species"), (20) (defining "threatened species"). Listed species are entitled to certain protections under the Act. As relevant here, each federal agency must "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [protected species' critical] habitat." *Id.* § 1536(a)(2).

To carry out this mandate, the federal action agency may need to consult with the U.S. Fish and Wildlife Service ("FWS") and/or the National Marine Fisheries Service ("NMFS"). *Id.* § 1536(a)(2)–(3); 50 C.F.R. § 402.14(a). Each is the "consulting agency." If the proposed action is likely to adversely affect listed species or critical habitat, formal consultation is required. 50 C.F.R. §§ 402.13(b), 402.14(a)-(b). Formal consultation culminates in the issuance of a "biological opinion" ("BiOp"), in which the consulting agency examines the proposed action's anticipated effects on listed species and critical habitat and opines on whether the action is likely to jeopardize the species' continued existence or adversely modify its critical habitat. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. §§ 402.02, 402.14(h). If the consulting agency issues a "jeopardy" finding, the BiOp must identify "reasonable and prudent alternatives" to the proposed action, if any exist. 50 C.F.R. § 402.14(h)(1)(iv)(A), (h)(2).

Whether or not the proposed action is likely to jeopardize a species, it may cause "incidental take." *Id.* § 402.02 (defining "incidental take" as "takings that result from, but are not

2

the purpose of, carrying out an otherwise lawful activity conducted by the Federal agency or applicant").[1] In such cases, the consulting agency issues an Incidental Take Statement ("ITS") specifying the extent of anticipated take, identifying "reasonable and prudent measures" to minimize impacts, and setting forth terms and conditions for their implementation. 16 U.S.C. § 1536(b)(4); 50 C.F.R. § 402.14(i). Compliance with the ITS provides a safe harbor from civil and criminal liability for incidental take. 16 U.S.C. § 1536(*o*)(2).

### B.     The Committee

Congress recognized that there are circumstances where agency actions should be exempt from the ESA's requirements. It thus created the Endangered Species Committee and gave it authority to exempt an agency action from those requirements. *See id.* § 1536(e), (h); *see also id.* § 1536(a)(2) (ESA consultation requirements apply only in the absence of an exemption); *id.* § 1536(*o*)(1) (ESA take prohibitions do not apply following a Committee exemption).

The Committee consists of six permanent members: the Secretary of the Interior (who serves as chair), the Secretary of Agriculture, the Secretary of the Army, the Chairman of the Council of Economic Advisors, the Administrator of the Environmental Protection Agency ("EPA"), and the Administrator of the National Oceanic and Atmospheric Administration. *Id.* § 1536(e)(3)(A)-(F). In certain circumstances, the President appoints one person from each affected State. *Id.* § 1536(e)(3)(G).

---

[1] The ESA prohibits "any person" from engaging in actions collectively referred to as "take"—including harassing, harming, pursuing, hunting, shooting, wounding, killing, trapping, capturing, or collecting—of any endangered species without a permit or other exemption. 16 U.S.C. §§ 1532(19), 1538(a)(1)(B), 1536(b)(4), 1536(*o*)(2), 1539. The take prohibition can be extended to threatened species. *Id.* § 1533(d). Civil and criminal penalties attach to violations of the take prohibition. *Id.* § 1540.

The Committee is empowered to "sit and act at such times and places . . . as the Committee deems advisable" "for the purpose of carrying out its duties" under the statute. *Id.* § 1536(e)(7)(A). The Committee is required to meet at the call of the Secretary of the Interior in his role as Chairman or at the call of five Committee members. *Id.* § 1536(e)(5)(C). Five members constitute a quorum. *Id.* § 1536(e)(5)(A). When the Committee has convened, its meetings and records must be open to the public. *Id.* § 1536(e)(5)(D); 50 C.F.R. § 453.05(e).

### C.    Exemptions

An applicant may apply in writing for an exemption after the consulting agency makes specific findings. *See* 50 C.F.R. § 451.02(b). An application triggers a process that involves a Federal Register notice summarizing the application, an administrative hearing, a written report, and, generally, a Committee decision that makes specific findings. 16 U.S.C. § 1536(g)(2)(B), (g)(3)–(5), (h)(1).

Alternatively, the ESA provides: "Notwithstanding any other provision of this chapter, the Committee shall grant an exemption for any agency action if the Secretary of [War] finds that such exemption is necessary for reasons of national security." *Id.* § 1536(j); *see also* 50 C.F.R. § 453.03(d).[2] When the Secretary of War makes this finding, the application procedures do not apply. *See* 16 U.S.C. § 1536(j).

When the Committee grants an exemption, the agency action is exempt from the ESA's requirements. *See* 16 U.S.C. § 1536(a)(2), (*o*)(1). The Committee's final order is published in the Federal Register. *Id.* § 1536(*l*)(1); 50 C.F.R. § 453.03(b).

---

[2] The Secretary of War may also make such a finding for an agency action that is the subject of an exemption application.

The Committee's final determination constitutes final agency action under the APA. 16 U.S.C. § 1536(h)(1). Jurisdiction to review the decision lies exclusively in the U.S. Court of Appeals for the circuit in which the agency action is being carried out. *Id*. § 1536(n).

## II.    Factual and Procedural Background

### A.    ESA Section 7 consultation on oil and gas activities in the Gulf of America

Federal agencies have consulted with NMFS regarding oil and gas activities in the Gulf of America since the late 1970s, initially on a lease-sale-by-lease-sale basis. *See* NMFS Biological and Conference Opinion on BOEM and BSEE's Oil and Gas Program Activities in the Gulf of America, at 7 (May 20, 2025), *available* at https://www.fisheries.noaa.gov/s3//2025-05/BOEM-BSEE-Gulf-of-America-Oil-and-Gas-Program-BiOp-5.20.25.pdf. In the 2000s, NMFS began consulting with action agencies on certain activities programmatically, though individual lease sale consultations continued in parallel. *See id*.

In 2010, NMFS and the two agencies within the Department of the Interior that oversee the Gulf's oil and gas activities, the Bureau of Ocean Energy Management ("BOEM") and Bureau of Safety and Environmental Enforcement ("BSEE"), agreed to pursue a single programmatic, Gulf-wide ESA consultation. That consultation covers oil and gas lease sales and activities that occur during exploration, development, production and decommissioning in the Gulf of America associated with BOEM and BSEE's Outer Continental Shelf oil and gas program. *Id.* at 6, 10. After years of interagency review, NMFS issued a final programmatic BiOp in March 2020. *Id.* at 8-9. NMFS issued the current BiOp for oil and gas activities in the Gulf of America in May 2025.[3] *See* Am. Compl. (Dkt. No. 22) ¶ 69.

---

[3] NMFS issued the current BiOp after a district court vacated the 2020 BiOp and deferred the vacatur date. *See Sierra Club v. NMFS*, 797 F. Supp. 3d 440 (D. Md. 2024), *as amended*, No. 8:20-cv-3060, 2024 WL 6817999 (D. Md. Oct. 21, 2024). The current BiOp was challenged

Separately, FWS issued its own BiOp on BOEM and BSEE's Gulf oil and gas program in April 2018. *See id.* ¶ 67. The agencies later reinitiated consultation to consider new information. In March 2025, FWS confirmed that the new information did not change the conclusions in its 2018 BiOp.[4] *Id.* ¶ 68.

**B.      NEPA review**

In August 2025, BOEM issued a Final Programmatic Environmental Impact Statement ("EIS") for Gulf of America Regional Outer Continental Shelf Oil and Gas Lease Sales and Post-Lease Activities ("2025 EIS"), *available at* https://www.boem.gov/environment/environmental-assessment/final-goa-peispdf. An EIS is a NEPA document analyzing the potential impacts of an agency action on the environment. *See* 42 U.S.C. §§ 4332(2)(C), 4336e(6). In the 2025 EIS, BOEM analyzed the impacts of Gulf of America oil and gas leasing and post-leasing activities, including exploration, development, production, and decommissioning. *See* 2025 EIS ch. 1,

---

in two lawsuits. *See* No. 8:25-cv-1627 (D. Md.); No. 2:25-cv-691 (W.D. La.). One case went to decision, and the court concluded that NMFS's jeopardy determination for the Rice's whale, and, therefore, the BiOp's reasonable and prudent alternative, were flawed. *Louisiana v. NMFS*, 817 F. Supp. 3d 390 (W.D. La. 2026). The court remanded the 2025 BiOp to the agency but, on the government's motion for relief from the remedy order in light of the Committee's exemption, the court modified the order to remove the requirement regarding remand. W.D. La. No. 2:25-cv-691, Dkt. Nos. 63, 64. In the case pending in the District of Maryland, on April 29, 2026, NMFS moved to dismiss the case as moot in light of the Committee's exemption. D. Md. No. 8:25-cv-1627, Dkt. No. 99.

[4] Both of FWS's decisions are being challenged in litigation. *See Ctr. for Biological Diversity v. Burgum*, No. 1:24-cv-990-DLF (D.D.C.). On April 23, 2026, FWS moved to dismiss the case as moot in light of the Committee's exemption. D.D.C. No. 1:24-cv-990, Dkt. No. 48.

at 1-4. The EIS considered impacts of those activities on endangered species and their critical habitats in the Gulf of America. *Id.*, ch. 4, *passim*.

### C.      Meeting of the Committee and Exemption Order

On March 13, 2026, the Secretary of War notified the Secretary of the Interior that he found it necessary for reasons of national security to exempt from the ESA's requirements all Gulf of America oil and gas activities associated with BOEM and BSEE's Outer Continental Shelf oil and gas program. *See* Endangered Species Committee Decision and Order, 91 Fed. Reg. 16966, 16966 (Apr. 3, 2026) ("Exemption Order"); *see also* Am. Compl. ¶ 114. The Secretary of War requested that the Secretary of the Interior, in his capacity as Chairman of the Committee, convene a Committee meeting as soon as practicable. Exemption Order, 91 Fed. Reg. at 16966. Later that day, the Secretary of the Interior filed with the Office of the Federal Register a notice announcing that the Committee would meet on March 31, 2026, regarding an ESA exemption for Gulf of America oil and gas activities. *See* Endangered Species Committee Meeting Announcement, 91 Fed. Reg. 12672 (Mar. 16, 2026).

On March 31, 2026, the Committee members convened and unanimously voted to grant the exemption for oil and gas activities in the Gulf. *See* Exemption Order, 91 Fed. Reg. at 16966-67. The order granting the exemption was published in the Federal Register on April 3, 2026. *Id.*

### D.      Plaintiff's district court and circuit court actions

On April 1, 2026, the day after the Committee voted to grant the exemption, Plaintiff filed this lawsuit, raising a single claim: an APA challenge to the national security determination and the Committee's grant of the exemption. *See* Dkt. No. 1 ¶¶ 97-102.

On April 3, 2026, Plaintiff filed a petition for review in the D.C. Circuit, alleging that the Committee "did not . . .  conduct a formal adjudication under section 7(g) and render a decision on the record pursuant to section 7(h)" and that the Committee instead granted the exemption pursuant to Section 7(j). *See* Exhibit A (Plaintiff's Petition for Review), *NRDC, Inc. v. Burgum*, D.C. Cir. No. 26-1079, Doc. No. 2167070, at 2-3. Plaintiff indicated that it believed review was proper in the district court pursuant to the APA, rather than in the courts of appeals, pursuant to Section 7(n). *Id.* at 3. Nonetheless, Plaintiff explained that it was filing a "protective petition for review" in the D.C. Circuit. *Id.*

On April 20, 2026, after the Judicial Panel for Multidistrict Litigation ordered Plaintiff's petition for review consolidated with another pending petition in the Fifth Circuit,[5] the D.C. Circuit transferred Plaintiff's petition to the Fifth Circuit, where it is now pending. D.C. Cir. No. 26-1079, Doc. No. 2169330; *see* Consolidated 5th Cir. No. 26-60240, *Am. Energy Ass'n et al. v. Burgum, et al.* (four consolidated petitions).

On May 26, 2026, Plaintiff filed its amended complaint, raising three claims: (1) an APA claim against the Secretary of War, alleging that the national security determination was unlawful; (2) an APA claim against the members of the Committee challenging the Committee's "implementation of Secretary Hegseth's national security determination"; and (3) a NEPA claim against the members of the Committee alleging the exemption is unlawful because the Committee did not prepare an EIS before granting the exemption. Am. Compl. ¶¶ 140-52.

---

[5] Because multiple petitions for review of the Committee's exemption order were filed within ten days of the date of issuance of the order, the Committee filed a Notice of Multi-Circuit Petitions for Review with the Judicial Panel on Multi-District Litigation. *See* 28 U.S.C. § 2112(a)(3). The Panel conducted a random selection process and ordered that the petitions be consolidated in the U.S. Court of Appeals for the Fifth Circuit. Plaintiff filed a motion to vacate the Panel's order on April 24, 2026, which was denied. Plaintiff's opening brief in the Fifth Circuit is due July 15, 2026.

### E.    Other pending actions

There are currently seven pending challenges involving the Committee's grant of an exemption for oil and gas activities. Three cases are pending in this Court, including this case and two related cases, *Center for Biological Diversity v. Burgum et al.*, D.D.C. No. 1:26-cv-940, and *Healthy Gulf et al. v. Burgum et al.*, D.D.C. No. 1:26-cv-1118. In addition, there are four petitions (including Plaintiff's) presently pending in the Fifth Circuit Court of Appeals. *See* Consolidated 5th Cir. No. 26-60240, *Am. Energy Ass'n et al. v. Burgum, et al.* (four consolidated petitions).

### LEGAL STANDARDS

Federal courts are courts of limited jurisdiction, *see Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994), and thus the inquiry into "subject matter jurisdiction 'is, of necessity, the first issue for an Article III court.'" *Loughlin v. United States*, 393 F.3d 155, 170 (D.C. Cir. 2004) (citation omitted); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (noting that jurisdiction must "be established as a threshold matter"). It is a plaintiff's burden to establish that the court has jurisdiction in the first instance. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The factual allegations in the complaint bear closer scrutiny on a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction than on a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Neville v Burrows*, No. 22-3246 (RC), 2024 WL 578986, at *5 (D.D.C. Feb. 13, 2024) (Contreras, J.). In addition, a court may consider materials outside the pleadings to determine whether it has jurisdiction. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197-98 (D.C. Cir. 1992).[6]

---

[6] Defendants' motion to dismiss raises legal arguments that do not depend on an administrative record and, as such, fall outside the scope of Local Civil Rule 7(n). *See* Minute Order, *Safari Club Int'l v. Jewell,* No. 14-cv-670 (D.D.C. June 23, 2014) ("LCvR 7(n)(1) was

## ARGUMENT

Congress carefully designed the exemption process in Section 7 to culminate in a single decision—an exemption under § 1536(h)—that is subject to judicial review exclusively in the courts of appeals. *See* 16 U.S.C. § 1536(n). Rather than press its challenge exclusively in the courts of appeals, Plaintiff seeks to raise its challenge in both this Court and the court of appeals. Because only the courts of appeals—not this Court—have jurisdiction over Plaintiff's claims, and based on Plaintiff's improper attempt to split its claims, the Court should dismiss this case.

**I.      Judicial review of Plaintiff's claims is available exclusively in the courts of appeals.**

Under the statute, the grant or denial of an exemption is the only event that triggers judicial review, providing that any person may seek judicial review under the APA "of any decision of the Endangered Species Committee under subsection (h) in the United States Court of Appeals for . . . any circuit wherein the agency action concerned will be, or is being, carried out . . . ." 16 U.S.C. § 1536(n). The Committee here granted an exemption under subsection (h), which means that judicial review may be had only in the court of appeals pursuant to subsection (n).

**A.      Congress designed the ESA exemption process to culminate in one final agency action.**

**1.      The 1978 ESA Amendments create an exemption process that culminates in a single, final agency action.**

After the ESA was enacted, conflicts arose between the ESA's "mandate to protect and manage endangered and threatened species and other legitimate national goals and priorities such

---

amended for the convenience of the Court and addresses cases at the summary judgment stage . . . ."). But even if the rule applies here, Defendants request leave from this requirement because "the administrative record is not necessary for [the court's] decision." *Connecticut v. U.S. Dep't of the Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018).

as providing energy, economic development and other benefits to the American people." S. Rep. No. 95-874, at 2 (1978). Congress therefore amended the ESA in 1978 to establish a committee with the power to grant exemptions for federal actions from the requirements of the ESA. *Id.* at 1-2.

Consistent with that legislative purpose, the 1978 amendments established the Committee, whose role is to consider whether to grant or deny exemptions from the requirements of the ESA, as provided by Section 7(h). 16 U.S.C. § 1536(e)(1)-(2), (h)(1). Section 7(e) enumerates the powers of the Committee "for the purpose of carrying out its duties under this section," namely, its duty to determine whether to grant an exemption under Section 7(h). *Id.* § 1536(e)(1)-(2), (e)(7)(A).

When the Committee grants or denies an exemption, it does so by vote with a quorum of its members present, and five votes are required to grant an exemption. *Id.* § 1536(e)(5)(A), (h)(1). The Committee's decision constitutes final agency action for purposes of judicial review. *Id.* § 1536(h)(1). The Committee is required to document its findings in a written decision and, if it grants an exemption, it must also issue an order granting the exemption. *Id.* § 1536(*l*)(1). Its decision and order must be published in the Federal Register. 50 C.F.R. § 453.03(b).

Congress has therefore provided a clear statutory endpoint for the exemption process: the Committee must vote, and, if it grants the exemption, it must issue an order along with its written decision. Not only is it clear from the structure of the statute that Congress intended the Committee's decision to be the final agency action, Congress left no ambiguity as to what constitutes a final agency action. Section 7(h)(1) provides, "[a]ny final determination by the Committee under this subsection shall be considered final agency action for purposes of chapter 7 of Title 5 [of the United States Code]." 16 U.S.C. § 1536(h)(1). Judicial review of that

11

final agency action lies exclusively in the court of appeals for any circuit in which the agency action is being, or will be, carried out. *Id.* § 1536(h)(1), (n). A person seeking judicial review of a final Committee determination must file the petition within 90 days of issuance of the Committee's decision. *Id.* § 1536(n).

No provision of the ESA disturbs the conclusion that Congress intended to create a single avenue for judicial review of a Committee decision regarding an exemption. Congress drafted the 1978 Amendments to the ESA against the backdrop of the existing ESA, which included express provisions for judicial review in the district courts. *See id.* § 1540(c), (g). Yet, unlike with violations of the ESA, Congress made no provision for review of a Committee decision in the district courts under the ESA citizen-suit provision (or any other cause of action). *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quotation omitted)). Indeed, Section 7 expressly provides that the 60-day notice requirement for citizen suits is inapplicable to challenges to the final determination of the Committee, further demonstrating that Congress intended a single avenue for review of Committee determinations within the abbreviated 90-day limitations period provided by Section 7(n). 16 U.S.C. §§ 1536(m), (n), 1540(g).

The national security provision in Section 7(j) does not change the fact that Section 7(h) is the source of the exemption. Section 7(j) states: "Notwithstanding any other provision of this chapter, the *Committee shall grant an exemption* for any agency action if the Secretary of [War] finds that such exemption is necessary for reasons of national security." *Id.* § 1536(j) (emphasis added). The Committee, not the Secretary of War, grants the exemption. Also, Section 7(j) is

12

nested within the exemption provisions and represents a predicate step to a Committee exemption. *See id*. ("the Committee shall grant an exemption" based on the Secretary of War's findings). The text of Section 7 consistently refers to only a single exemption: the exemption in Section 7(h). *See* id. § 1536(a)(2), (e)(2), (h)(1), (*l*), (m), (*o*)(1). Congress did not change the meaning of that term *sub silentio* in Section 7(j).

The plain text, purpose, and structure of Section 7 make clear that the work of the Committee culminates in a single, final agency action—a determination to grant or deny an exemption. *Id.* § 1536(h)(1).

### 2.    The Committee granted an exemption under Section 7(h).

The Committee's order dated March 31, 2026, granted an exemption under Section 7(h). The order provides: "[B]ased on the Secretary of War's National Security Findings, the Committee grants pursuant to section 7(h) an exemption from the requirements of the Endangered Species Act for Gulf of America Oil and Gas Activities." Exemption Order, 91 Fed. Reg. at 16966 (emphasis added); *see also id.* at 16966-67 (expressly stating elsewhere that the exemption was made under Section 7(h)). By its own express terms, the Committee's order is an exemption under Section 7(h).

The fact that the Secretary of War's national security determination prompted the Committee to convene does not change the fact that the Committee granted an exemption pursuant to Section 7(h). Section 7(j) provides that the Committee "shall grant an exemption for any agency action if the Secretary of [War] finds that such exemption is necessary for reasons of national security." 16 U.S.C. § 1536(j). The national security determination is a predicate to the Committee's grant of the exemption under Section 7(h)—not the source of the exemption itself. The only exemption in Section 7 is the exemption in Section 7(h).

13

Because this case involves a Committee exemption under Section 7(h), Plaintiff cannot evade the requirements of Section 7(n), which requires all actions challenging the exemption to be brought in the courts of appeals.

### B.    Judicial review of the grant of an exemption is available only in the courts of appeals.

Plaintiff challenges the Committee's exemption under Section 7(h). And Section 7(n) creates a single path to judicial review of the Committee's decision: a petition for review in the courts of appeals filed within 90 days of issuance of the Committee's determination to grant or deny an exemption. 16 U.S.C. § 1536(n). Thus, Plaintiff may only obtain review in the courts of appeals.

Congress "may prescribe the procedures and conditions under which, and the courts in which, judicial review of administrative orders may be had." *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958). Although "the normal default rule is that persons seeking review of agency action go first to district court," that default rule is superseded "when a direct-review statute specifically gives the court of appeals subject-matter jurisdiction to directly review agency action." *Am. Petroleum Inst. v. S.E.C.*, 714 F.3d 1329, 1332 (D.C. Cir. 2013) (citations omitted).

Section 7(n) provides that "[a]ny person . . . may obtain judicial review . . . of any decision of the [Committee] under subsection (h)" by filing a petition in the appropriate court of appeals within 90 days of the decision. 16 U.S.C. § 1536(n). A statute providing that a plaintiff "may" obtain judicial review in the courts of appeals vests jurisdiction exclusively in the courts of appeals. *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 114 (2018) (statute providing that review "may be had" in the courts of appeals (33 U.S.C. § 1369(b)) vested jurisdiction "directly and exclusively in the federal courts of appeals"); *Wagner v. Fed. Election Comm'n*, 717 F.3d

14

1007, 1012 & n.5 (D.C. Cir. 2013) (per curiam) (citing six other examples and explaining the background principle that courts interpret jurisdictional statutes using "may" "to confer exclusive jurisdiction" in the courts of appeals).

As the D.C. Circuit has explained, "[i]t is well settled that even where Congress has not expressly stated that statutory jurisdiction is 'exclusive,' . . . a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute." *Telecomms. Rsch. & Action Ctr. [("TRAC")] v. F.C.C.*, 750 F.2d 70, 77 (D.C. Cir. 1984) (citations omitted); *see also Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 498 (D.C. Cir. 2018) ("If a special statutory review scheme exists . . . it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review.") (quotation omitted); *Bombardier, Inc. v. U.S. Dep't of Lab.*, 145 F. Supp. 3d 21, 31 (D.D.C. 2015) (Contreras, J.) ("special statutory review scheme" is "the exclusive means of obtaining judicial review"). Thus, Congress provided for judicial review of a written decision and order granting an exemption— including the Exemption Order—exclusively in the court of appeals.

Plaintiff here expressly challenges the Committee's exemption. Am. Compl. ¶¶ 140-52. But, as noted, the ESA explicitly limits review of such claims to properly filed petitions in the courts of appeals. Plaintiff's focus on the fact that there was no application for an exemption, and its challenge to the Secretary of War's national security determination, do not provide an end-run around Section 7(n)'s bar on district court litigation.

That provision incorporates by reference the judicial review provisions in the APA. 16 U.S.C. § 1536(n). The APA, in turn, provides that "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. Thus, under APA Section 704, Plaintiff's challenges to

15

procedural and intermediate agency action—including any claim about whether the application procedures in Section 7(g) were followed, and Plaintiff's challenge to intermediate administrative action such as the Secretary of War's national security exemption—may be raised only on a petition for review of the final agency action. *See Nader v. Volpe*, 466 F.2d 261, 269-70 (D.C. Cir. 1972) (procedural challenge to pending proceedings is not subject to immediate judicial review in the district court but must, instead, be raised on petition for review in the courts of appeals). Similarly, when a statute "commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals." *Sierra Club v. Thomas*, 828 F.2d 783, 787 (D.C. Cir. 1987) (quoting *TRAC*, 750 F.2d at 75), *partly abrogated by statute as recognized by Mexichem Specialty Resins, Inc. v. E.P.A.*, 787 F.3d 544, 553 n.6 (D.C. Cir. 2015) (addressing jurisdictional changes to 1990 Clean Air Act amendments). Thus, a claim challenging procedural or intermediate actions that will culminate in a final agency action reviewable only in the courts of appeals may only be raised in the courts of appeals.

Allowing review of claims challenging Committee action in the district courts would frustrate Congress' design. When Congress provides for exclusive review of an action in the courts of appeals, as it has done with Section 7(n), it does so to provide for speedy resolution and finality, and to avoid duplicative and potentially conflicting review. *See TRAC*, 750 F.2d at 78 (exclusive jurisdiction in the courts of appeals eliminates duplicative and potentially conflicting review); *Eagle-Picher Indus., Inc. v. U.S. E.P.A.*, 759 F.2d 905, 911 (D.C. Cir. 1985) (Congress sets time limits on petitions for review to "impose statutory finality on agency orders, a choice [the courts] may not second-guess.") (footnote and citation omitted); *Ctr. for Biological Diversity v. U.S. E.P.A.*, 106 F. Supp. 3d 95, 101 (D.D.C. 2015) (exclusive review in the

16

appellate courts is intended to ensure speedy resolution and avoid unnecessary delay in the district courts), *aff'd*, 861 F.3d 174 (D.C. Cir. 2017). Consistent with that intent, Congress usually applies rigorous limitations periods to petitions for review, as opposed to the default six-year limitations period typically applied to APA claims in the district court under 28 U.S.C. § 2401(a). A plaintiff cannot "effortlessly evade" Congress' intent for circuit review and the attendant 90-day limitations period by raising general APA claims in the district courts. *See Hinck v. United States*, 550 U.S. 501, 507 (2007) (quotation omitted).

It would be inconsistent with congressional intent for a plaintiff to litigate a challenge to a national security determination and exemption in this Court, when Congress provided that such claims be brought in the courts of appeals. For example, it would flout Congress' preference for finality, and potentially lead to inconsistent results, if a plaintiff could challenge a national security determination in this Court any time within the six-year window for APA claims, when Congress expressly provided that challenges to Committee decisions must be filed within 90 days. *Compare* 28 U.S.C. § 2401(a) (default six-year limitations period), *with* 16 U.S.C. § 1536(n) (90-day window for petitions for review of Committee decisions). In addition, Congress provided in Section 7(n) that petitions must be consolidated for review in a single court. *See* 16 U.S.C. § 1536(n) (directing the Committee to file the administrative record "as provided in section 2112 of Title 28"); 28 U.S.C. § 2112(a) (providing mandatory procedures for the consolidation of petitions for review filed in multiple circuits).

Look no further than Plaintiff's own litigation strategy: it is attempting to litigate its challenge to the Committee's grant of an exemption both in this Court and the courts of appeals. It would defy Congress' intent for finality and consistency of judicial review in enacting Section 7(n) to have a court of appeals entertain Plaintiff's challenge to the Committee's decision, while

17

allowing this Court to hear the same challenge—with potentially inconsistent results. Plaintiff must proceed in the courts of appeals, or not at all.

### C.    The APA does not provide an alternative avenue for Plaintiff to bring its claims in district court.

General APA remedies in district court are not available where another, more specific, statute precludes those remedies. 5 U.S.C. § 701(a)(1); *see Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984) (noting the APA "withdraws [the] cause of action [under the APA] to the extent the relevant statute 'precludes judicial review'" (citing § 701(a)(1))). Here, Section 7(n) precludes general review under the APA—foreclosing Plaintiff's reliance on general federal question jurisdiction under 28 U.S.C. § 1331 and the APA to bring its challenge to this Court.

The Supreme Court has repeatedly held that "a precisely drawn, detailed statute pre-empts more general remedies" such as the APA. *See EC Term of Years Tr. v. United States*, 550 U.S. 429, 433–34 (2007) (citing *Brown v. G.S.A.*, 425 U.S. 820, 834 (1976); *Block*, 467 U.S. at 345-48 (general APA review precluded by more specific statutory review provision). Indicia of Congressional intent for a "detailed statute" to preempt more general remedies include a specific (and often more rigorous) limitations period, provisions naming a forum for review, and special provisions on the manner in which the case is to be decided. *See Hinck*, 550 U.S. at 506 (one-sentence provision providing a forum for adjudication, limitations period, standard of review, and authorization for judicial relief preempted general remedies); *EC Term of Years Tr.*, 550 U.S. at 434 (explaining that preemption of general remedies is evident where "resort to a general remedy would effectively extend the limitations period for the specific one"); *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 122-25 (2005) (the Telecommunications Act preempted the general remedy of 42 U.S.C. § 1983 because the Act "limits relief in ways that § 1983 does not," including with a more specific 30-day limitations period and requirements that

the case be heard and decided on an expedited basis). Such provisions demonstrate Congress'

preference for finality and avoidance of duplicative or conflicting judicial review.

Section 7(n) contains indicia that Congress intended to preclude review via general

remedies in the district courts because it contains (1) a strict 90-day limitations period

(contrasted with the default six-year limitations period typically applied to APA claims in the

district court under 28 U.S.C. § 2401(a)), (2) specific provisions channeling judicial review to

the courts of appeals, rather than the district courts, (3) instructions on the standard of review,

and (4) specific provisions for how the Committee may be served and may be represented by

counsel. Time limits, in particular, are evidence of congressional preference for exclusive review

in the courts of appeals. *See EC Term of Years Tr.*, 550 U.S. at 434. And Congress' incorporation

of the provisions for petitions for review in 28 U.S.C. § 2112 demonstrates that Congress

intended for challenges to the validity of exemption decisions to be resolved in a single court of

appeals. *See* 28 U.S.C. § 2112(a); *TRAC*, 750 F.2d at 78 (exclusive jurisdiction in the courts of

appeals eliminates duplicative and potentially conflicting review).

It makes no difference that Section 7(n) incorporates APA review standards. Statutes

providing for exclusive review in the courts of appeals sometimes incorporate the

standard-of-review provisions of the APA, but APA review *in the district court* is still displaced.

*See* 5 U.S.C. § 7123 (review of decisions of Federal Labor Relations Authority); 15 U.S.C.

§ 3416 (National Gas Policy Act). The APA's general provisions are displaced by more specific

statutory review provisions, even where those specific statutory review provisions incorporate

APA standards of review. *See Ecee, Inc. v. F.E.R.C.*, 611 F.2d 554 (5th Cir. 1980) (specific

statutory review provision that expressly incorporated 5 U.S.C. §§ 701-06 nonetheless displaced

5 U.S.C. § 704's provisions allowing direct judicial review, and displaced APA provisions on

19

venue and record filing, in favor of more specific judicial review provisions); *City of Rochester v. Bond*, 603 F.2d 927 (D.C. Cir. 1979) (special review provision incorporating APA judicial review standards in Communications Act provided for exclusive review in the court of appeals).

Plaintiff's attempt to use the APA as a vehicle to get its claims into district court—where there is a clear statutory mandate channeling its claims to the courts of appeals—therefore fails as a matter of law. Plaintiff must bring its claims to the proper court of appeals under Section 7(n) or not at all. *See also* 5 U.S.C. § 703 ("The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute."); *Arch Coal*, 888 F.3d at 498 ("If a special statutory review scheme exists . . . it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review.") (citation omitted).

### D.    Plaintiff's NEPA claim similarly must be raised on a petition for review in the courts of appeals.

Plaintiff's NEPA claim (if it can be raised at all) must also be raised only in a petition for review in the appropriate court of appeals. As Plaintiff concedes, its NEPA claim challenges the validity of the Committee's decision. Am. Compl. ¶ 150. This concession tracks the law. NEPA does not provide a private right of action. Instead, the APA "supplies the applicable vehicle" for raising a NEPA claim. *See Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 507 (D.C. Cir. 2010). Recently, in *Seven County Infrastructure Coalition v. Eagle County*, the Supreme Court confirmed that a NEPA claim is a "purely procedural" challenge to "the agency's final decision" based on an alleged deficiency in the NEPA review process. 605 U.S. 168, 180, 184-85 (2025). On a NEPA challenge, "the ultimate question is not whether an EIS in and of itself is inadequate, but whether the agency's final decision was reasonable and reasonably explained." *Id.* at 184-85. At bottom, a NEPA claim is a procedural APA challenge to the final

20

agency action. Because Plaintiff's NEPA claim challenges the Committee's exemption, and the exemption is subject to exclusive review in the court of appeals, this Court lacks jurisdiction over any NEPA claim related to the exemption.

The D.C. Circuit has repeatedly confirmed this result in similar circumstances, holding that NEPA challenges to agency actions subject to exclusive review in the courts of appeals must be raised in the courts of appeals. The D.C. Circuit first considered this question in *Environmental Defense Fund v. EPA*, where a petitioner sought circuit court review of EPA's insecticide registration under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") and parallel district court review of a NEPA claim. 485 F.2d 780, 783 (D.C. Cir. 1973) (per curiam). The courts of appeals had exclusive jurisdiction over challenges to the FIFRA registration. *Id.* Noting that Congress' preference for speedy review of FIFRA registrations in the courts of appeals would be defeated if challenges to the agency's order could "be litigated in several proceedings," the D.C. Circuit concluded that it had exclusive jurisdiction over the NEPA claim because it had exclusive jurisdiction over "all issues pertaining to the validity" of the registration. *Id.* As in *Environmental Defense Fund*, the Committee's order here is subject to challenge only in the courts of appeals, and Plaintiff has attempted to file a parallel action in the district court challenging the Committee's order on NEPA grounds. *See id.*

The D.C. Circuit reached the same conclusion in *City of Rochester*, considering challenges to agency actions by the Federal Aviation Administration and Federal Communications Commission, which were subject to review exclusively in the courts of appeals. 603 F.2d at 934-35. The plaintiffs attempted to invoke the jurisdiction of the district court, relying in part on a NEPA claim. The Court reaffirmed its reasoning from *Environmental Defense Fund*, explaining that "we disagree that the district court may exercise concurrent

21

jurisdiction merely because a violation of NEPA is alleged. The allegation may be raised directly in the courts of appeals; and insofar as it may affect the lawfulness of a directly appealable order we think it must be." *City of Rochester*, 603 F.2d at 936 & n.49.

Other circuits have similarly held that NEPA claims must be raised on a petition for review in the courts of appeals where the NEPA challenge attacks the validity of an agency action subject to review only in the courts of appeals, in a variety of contexts involving different statutory review provisions that channel challenges to agency action to the courts of appeals. *See Michigan v. United States*, 994 F.2d 1197, 1204 (6th Cir. 1993) (NEPA claim against Nuclear Regulatory Commission's regulations, subject to challenge only in the courts of appeals, could only be brought on petition for review); *Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 911-12 (9th Cir. 1989) (no district court jurisdiction over NEPA claim against the U.S. Forest Service where plaintiff's suit actually targeted a Federal Energy Regulatory Commission license, subject to challenge only on a petition for review). Section 7(n)'s special statutory review provision similarly requires that Plaintiff's attack on the Committee's order—whether couched as a NEPA claim or otherwise—must be brought in the courts of appeals or not at all.

## II.     Plaintiff cannot maintain parallel actions challenging the same exemption order.

Plaintiff's amended complaint should also be dismissed for a separate reason: Plaintiff filed a second, parallel lawsuit challenging the same decision by the Committee to grant the exemption in the D.C. Circuit, which is now pending in the Fifth Circuit. *See* Exhibit A (Plaintiff's Petition for Review); *see also* Consolidated 5th Cir. No. 26-60240, *Am. Energy Ass'n et al. v. Burgum, et al.* (four consolidated petitions, including Plaintiff's). Claim-splitting is the pre-judgment counterpart to claim preclusion: it bars a plaintiff from maintaining duplicative litigation before either action has proceeded to judgment. *Steele v. United States*, 144 F.4th 316,

324-25 (D.C. Cir. 2025). Dismissal for claim-splitting is appropriate under Federal Rule of Civil Procedure 12(b)(6) because claim-splitting is a "substantive legal impediment" evident from the face of the complaint or a judicially noticeable record. *Id.* at 326-27.

Federal courts have long rejected "duplicative litigation" that requires two courts to adjudicate the same dispute at the same time. *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal [ ] courts … the general principle is to avoid duplicative litigation."); *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952) ("Why … should there be two litigations where one will suffice? We can find no adequate reason."). These principles apply with force here, where Plaintiff itself invokes a special statutory review provision in the parallel Circuit court action. When "there exists a special statutory review procedure, it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." *City of Rochester*, 603 F.2d at 931; *cf. Elgin v. Dep't of Treasury*, 567 U.S. 1, 14 (2012) (rejecting interpretation that would permit "parallel litigation regarding the same agency action" and undermine an integrated review scheme). Because Plaintiff has availed itself of the special statutory review provision, and because the law is unequivocal that those provisions take precedence over concurrent district court litigation, this amended complaint must be dismissed.

The rule against claim-splitting confirms this result. As noted, claim-splitting is the pre-judgment counterpart to claim preclusion, barring a plaintiff from maintaining duplicative litigation before either action has proceeded to judgment. *Steele*, 144 F.4th at 324-35. The rule rests on basic principles of judicial administration and fairness: it conserves judicial resources, avoids inconsistent results, and prevents serial forum-shopping and piecemeal litigation. *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981); *see also Zerilli v. Evening News*

23

*Ass'n*, 628 F.2d 217, 222 (D.C. Cir. 1980) (a plaintiff may not maintain "two separate actions involving the same subject matter at the same time . . . against the same defendant") (citation omitted). In applying this rule, courts ask whether, if the first action were final, the second action would be barred under ordinary claim-preclusion principles.[7] *Clayton v. Dist. of Columbia*, 36 F. Supp. 3d 91, 94 (D.D.C. 2014).

That standard is easily met here. The two actions involve the same plaintiff/petitioner, the same federal government interests, the same challenged agency action, and the same requested practical relief. Plaintiff's amended complaint challenges Secretary Hegseth's national-security finding and the Committee's March 31, 2026 exemption order for Gulf of America oil and gas activities, alleging that the finding and exemption violate the APA and asking this Court to declare the exemption unlawful and vacate it. Am. Compl. ¶¶ 1, 4–6. Two days after Plaintiff filed its initial complaint in this district court action, Plaintiff filed a petition for review in the D.C. Circuit, also challenging the exemption. *See* Exhibit A (Plaintiff's Petition for Review). The petition advances the same core theory Plaintiff advances here—that the Committee acted under Section 7(j), not through a formal Section 7(g)–(h) adjudication. *Id.* at 2–3. And in its filing, Plaintiff acknowledged that its petition was filed because Federal Defendants contend that "judicial review is available only in the courts of appeals pursuant to section 7(n)." *Id.* at 3.

That Plaintiff included Secretary Hegseth as an additional official-capacity defendant in this case does not change the analysis. Claim-splitting and claim preclusion turn on whether the

---

[7] Normally, courts will proceed with the first-filed action to the exclusion of any later-filed actions. *See, e.g.*, *Katz v. Gerardi*, 655 F.3d 1212, 1218-19 (10th Cir. 2011). But this principle must give way when, as here, the case involves a special statutory review provision where a statute commits final agency action to review by the courts of appeals, the appellate court has exclusive jurisdiction to hear suits seeking relief that might affect its future statutory power of review. *TRAC*, 750 F.2d at 72.

facts are sufficiently related in time, space, origin, or motivation, and whether they form a "convenient trial unit." *See Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004). Official-capacity defendants representing the same sovereign are in privity where, as here, the same federal interests are at stake. *See Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–03 (1940) ("There is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is res judicata in relitigation of the same issue between that party and another officer of the government."). Nor can Plaintiff evade Section 7(n) by separating the Secretary of War's national-security finding from the Committee's final exemption order. The Secretary's finding is the predicate for the Committee's exemption; any challenge to that predicate is part and parcel of the challenge to the final Committee decision and must be raised, if at all, in the statutorily prescribed petition for review. *See* 5 U.S.C. § 704; *Nader*, 466 F.2d at 269.

Plaintiff may describe its court of appeals filing as "protective," but that label does not supply a right to maintain parallel actions. A protective petition may preserve a party's position while the proper forum is resolved; it cannot authorize simultaneous litigation of the same agency action in both a district court and a court of appeals. Allowing that tactic would invite duplicative briefing, competing schedules, and potentially inconsistent judgments over the same exemption order—the very problem Congress avoided by channeling review of Committee exemptions to the courts of appeals. *See* 16 U.S.C. § 1536(n). Because Plaintiff's petition for review in the court of appeals gives it the forum Congress provided, its duplicative district court complaint must be dismissed.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's amended complaint in its entirety for lack of subject matter jurisdiction based on the exclusive review provision in Section 7(n). Additionally, Plaintiff's amended complaint should be dismissed for claim-splitting.

Dated: June 9, 2026                    Respectfully submitted,

ADAM R.F. GUSTAFSON,
Principal Deputy Assistant Attorney General
BRADLEY CRAIGMYLE,
ROBERT N. STANDER,
Deputy Assistant Attorneys General
MEREDITH L. FLAX, Deputy Section Chief
MICHAEL R. EITEL, Acting Assistant Section Chief

 /s/ Sara M. Warren
SARA M. WARREN, Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Benjamin Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 598-5785
Fax: (202) 305-0275
Email: sara.warren@usdoj.gov

DAVIS A. BACKER, Senior Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
999 18th Street, North Terrace, Suite 600
Denver, Colorado 80202
Tel: (202) 305-5469
Fax: (202) 305-0275
Email: davis.backer@usdoj.gov

*Attorneys for Federal Defendants*

26